**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| ALEXANDER JORDAN, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 7:12-CV-179-O-KA |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**

This §2254 habeas corpus case has been referred to the undersigned by the District Court for further review, a hearing, if necessary, and findings of facts, conclusions of law, and recommendation. (Docket No. 24). Petitioner Alexander Jordan (Jordan) challenges his November 20, 2008 conviction of aggravated assault with a prior conviction enhancement. Following an initial mistrial, he was convicted by a jury in the 78th Judicial District Court of Wichita County, Texas of the offense and the jury assessed a punishment of sixty years in prison.

<u>Procedural History</u>

Following a mistrial granted to Defendant Jordan during his initial trial, Jordan was convicted in the second trial. Jordan's conviction was affirmed on direct appeal in an unpublished opinion by the Eleventh Court of Appeals of Texas. Jordan's petition for discretionary review was denied. Jordan did not file a petition for certiorari to the United States Supreme Court. Jordan filed a state petition for writ of habeas corpus challenging this conviction. It was denied by the Texas Court of Criminal Appeals without written order and without written findings by the trial court. Then Jordan timely filed his petition for writ of habeas corpus herein.

Factual Background

The lengthy trial court transcript discloses two separate descriptions of the events that culminated in the aggravated assault charge against Jordan; one by Billie Mae Williams, the alleged shooting victim, and one by Jordan himself.   These conflicting descriptions were accurately summarized by the Texas Court of Appeals as follows:

> The victim testified that she was walking to her mother's house before 7:00 a.m. on April 21, 2007. Appellant [Jordan] pulled over in his car and offered her a ride, which she declined. After continuing her walk, appellant approached her again in his vehicle. At this time, he jumped out of his car, put a gun to her head, and threatened to shoot her if she screamed. He then threw her into his car and transported her to the end of a dead-end street. Appellant then dragged her out of the car onto the side of the dead-end street and raped her as she attempted to fight him off her. The victim testified that, during the course of their struggle, appellant told her he was going to shoot her and that he subsequently shot her in her right leg above the knee. After appellant shot the victim, he returned to his car, fired another shot toward the victim that grazed her eye, and then sped away.
>
> Appellant admitted in his testimony given during the guilt/innocence phase that he had an encounter with the victim. However, he offered a much different version of the encounter. He testified that he hired the victim as a prostitute after she "flagged him down" when he drove by a hotel that prostitutes frequent. He contends that the victim directed him to transport her to the dead-end-street location and that she subsequently performed oral sex on him based upon their previous negotiations. Appellant testified that, at some point while he and the victim were engaged in sexual activities inside his car, a man that appellant previously saw with the victim at the hotel opened the door of the car. Appellant testified that he and this man start[ed] fighting outside the car. He further testified that the man had a gun in his hand and that the gun went off during the struggle, striking the victim in the leg.

During Jordan's first trial that resulted in the mistrial, the prosecutor was examining one of the investigators on the stand before the jury when a .380 shell casing unexpectedly fell out of the alleged victim's blue jeans that had been collected as evidence at the scene.   Jordan's trial counsel made a motion for mistrial which was granted.  Following the mistrial and before the re-trial, Jordan's trial counsel attempted to suppress the admission of the shell casing at trial, but was

overruled by the trial judge.  The shell casing and a .380 caliber gun found at a residence where Jordan periodically stayed were introduced into evidence at the re-trial.

Summary of Claims

Jordan alleges six essential claims of ineffective assistance by trial counsel, summarized as follows: (1) Failure to investigate available defenses resulting (1) in his failure to request a "necessity defense" instruction and (2) in his failure to request a "self-defense" instruction; (3) failure to object to "tampered evidence;" (4) failure to use a forensic expert to test the shell casings to confirm they came from Jordan's gun; (5) failure to challenge the shell casing as being tampered evidence that led to double jeopardy, and (6) failure to raise "double jeopardy" defense to the second trial.

The state's response to Jordan's claims are summarized as follows: (1) That the "necessity" defense is was unavailable since Jordan did not admit to any crime but instead denied that he fired the shot that struck the victim and averred that the threat came, not from the victim, but from the unidentified man; (2) That "self-defense" was unavailable as an affirmative defense because an accidental shooting is inconsistent with a self-defense claim and here Jordan denied that he fired the shot but instead identified the "other man" as the shooter;[1] (3) Counsel did not fail to challenge the shell casing because he in fact did filed motion to suppress, did have a hearing to challenge the chain of custody and the ballistics expert, but rightfully lost; (4) Since Jordan makes no proof of bad faith, the prosecution did not "goad the defendant in requesting a mistrial;" (5) Overall,  Jordan's allegations are conclusory only; and (6) Overall, Jordan cannot show prejudice as required by the second prong of *Stickland*.[2]

---

[1]    Citing *Whipple v. State*, 281 S.W.3d 482, 497 (Tex. App. – El Paso 2008).

[2]    *Strickland v. Washington*, 466 U.S. 668 (1984).

Standards for Analysis

This case is governed by AEDPA Standards established by Congress with respect to the analysis necessary for the issuance of a writ of habeas corpus for a defendant convicted under a state judgment.[3]  Jordan's claims of ineffective assistance of counsel are governed by the standard of review established by the Supreme Court in the *Strickland* case and its progeny.

Jordan raised his six claims before the state courts in his application for writ of habeas corpus there. His petition was "denied without written order."[4] Even without a written opinion or statement of reasons, the state courts' denial of Jordan's application was an adjudication on the merits. Under AEDPA where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing that there was no reasonable basis for the state court to deny relief. *Herrington v. Richter*, *supra*.

Self-Defense and Necessity

Though Jordan often conflates the defenses of "self-defense" and "necessity" in his rambling Petition and Reply, the state addresses them separately.  As to the affirmative defense of "self-defense," to the extent that Jordan relies on counsel's failure to investigate or request an instruction on the self-defense issue, the state responds that Jordan's testimonial protestations of his innocence precludes the issue of self-defense.  Further, the state urges that any additional investigation would have been futile as Jordan refused to admit that he intentionally shot the victim at all, let alone to protect himself.

---

[3]     28 U.S.C. § 2254(d) and see *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 412 (2000));.

[4]     The state submitted the state courts records of the first and second trial in 15 volumes (referenced herein as SCR), the appeal record (in one volume referenced herein as ACR) and Jordan's state habeas corpus proceeding(in one volume referenced as HCR).

In reply, Jordan alleges that in spite of his testimony denying he had the gun, or shot the victim, or pulled the trigger, he further testified that he fought with a man that had the gun who was trying to rob him and that during the affray, the gun went off injuring Williams. In his reply[5] Jordan newly alleges that, before trial, his trial counsel "produced a news paper clipping of the man who tried to rob petitioner whom petitioner identified and later found it to be the alleged victim's boyfriend and crack addicted pimp MEDRO DAVIS who was in the Wichita Falls News paper for similure [sic] acts with women and other men." Thus, he asserts that his "testimony and admitance [sic] to the struggle was sufficient to raise the defense."[6] He asserts that Federal law permits inconsistent defenses.[7]

As to the defense of necessity, Jordan claims his trial counsel rendered ineffective assistance because "The Petitioner's Testimony in Trial clearly raises the defense of Necessity...Counsel failed to request a Jury Instruction."[8] In support of his assertion as to the sufficiency of the evidence to raise the issue and thereby warrant the submission of an instruction, Jordan alleges that he testified about the fear he felt for his life during the robbery attempt against him by an unknown male assailant who had accompanied the victim earlier in the night. Later in his petition Jordan acknowledges that he "did not admit to offense; Petitioner (Jordan) did admit to the struggle with the robber which cause the gun to go off and shoot the alleged victim."[9] He expands upon this argument in his response saying:   "In summary Petitioner testified that he was

---

[5]      Docket No. 20.

[6]      *Id*. at p.15.

[7]      Reply, Docket No. 20, pp.13-14.

[8]      Petition, Docket No. 3, p.6-1.

[9]      *Id*. p.6-3.

attacked while he was engaging in consensual sex with Williams...Jordan fought for his life during this robbery not meaning to harm Williams or anyone else."

Finally, as to any inconsistency between his denial of the charged offense by his plea of not guilty and the affirmative defenses of "self-defense" and "necessity," Jordan argues that Federal law allows the pleading and proof of inconsistent defenses. Further, Jordan asserts he was entitled to an affirmative defense instruction "on every issue raised by the evidence regardless of wether it is strong, feeble, unimpeached or contridictive and even if the trial court's of the opinion that the testimony is not entitled to belief..."[10]

In response, the state simply reasserts that Jordan's denial that he shot Williams and that his testimony that an unidentified man accidentally shot her during their altercation foreclosed use of the necessity defense.[11] Citing *Whipple v. State*, 281 S.W. 3d 482 (Tex. Ct. App.-El Paso 2008), the state argues that since Jordan denied bringing the gun to the scene, denied pulling the trigger, and denied shooting Billie Mae Williams at all, his profession of innocence of the charged offense is incompatible with the defense of necessity, there by precluding any claim that his counsel was ineffective on this basis.

Justification defenses are different from general defenses. The effect of proving a general defense is to deny or rebut some element of the government's case. For example, a defense such as mistake of fact may negate the element of a culpable mental state.[12] When asserting a justification, on the other hand, the defendant generally admits commission of the alleged conduct, but argues that the conduct was justified under the facts and circumstances. "[A] justification defense is one that

---

[10]     *Id*. p.14.( Jordan's spelling errors are retained)

[11]     Respondent's Answer, Docket No. 13, p.16.

[12]     See Texas Penal Code § 8.02.

defines conduct otherwise criminal, which under the circumstances is socially acceptable and which deserves neither criminal liability nor even censure." W. LaFave, Substantive Criminal Law § 9.1(a)(3) at 7 (2nd ed.2003) (internal quotes omitted).

Texas statutes characterize both the affirmative defense of "self-defense" and the affirmative defense of "necessity" as defenses of justification.[13]   The Texas Court of Criminal Appeals has applied to these defenses the Confession and Avoidance Doctrine which requires an admission to the conduct, which includes both the act or omission and the requisite mental state. In *Juarez v. State*, 308 S.W.3d 398 (2010) the Court discussed at length the difficulty the Texas courts had previously experienced in applying the doctrine of confession and avoidance to the defenses of necessity and self-defense. Then turning explicitly to the defense of necessity, the Court reconciled the express language of the defense of necessity contained in Sec. 9.22 of the Texas Penal Code[14] with its emphasis on "Conduct" with the doctrine of confession and avoidance saying:

> "A survey of our case law since the enactment of the Penal Code in 1974 establishes that we have interpreted the necessity defense, as defined in Section 9.22, to embrace the confession and avoidance doctrine. And although our application of the doctrine has been inconsistent at times, we have applied in it in all of our decisions involving the necessity defense. The Legislature has amended the statute since its enactment in 1973, but it has never overruled our determination about the application of the confession and avoidance doctrine. In the absence of any contrary

---

[13]    The following statutory justification defenses are recognized in the Texas Penal Code: 1. Public duty [ § 9.21]; 2. Necessity [§ 9.22];  3. Self-defense [§§ 9.31, 9.32]. 4. Defense of another [§§ 9.33, 9.34]. 5. Defense of property [§§ 9.41, 9.42]. 6. Law enforcement privilege [§§ 9.51, 9.52;] 7. Privilege of parents, teachers, and guardians [§§  9.61-9.63].

[14]    Section 9.22 of the Texas Penal Code as follows:
"Conduct is justified if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be presented by the law proscribing the conduct; and, (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear."

legislative command, we will presume that the Legislature has approved our determination that Section 9.22 embraces the confession and avoidance doctrine."

Then, applying the confession and avoidance doctrine, the Court found that Juarez had admitted both to the act of biting on the hand of his attacker and to the requisite mental state. Accordingly, the Court held that the trial court had erred in failing to submit to the jury an instruction on the law of necessity. In applying the doctrine of confession and avoidance to the defense of necessity the Court made it clear that in order to invoke necessity as a defense the defendant must admit both to the commission of the charged act and to a requisite mental state.

<u>Necessity Defense</u>

In this case, Jordan was charged with the offense of aggravated assault. The precise language of that charge in the indictment was as follows:

> That ". . . ALEXANDER JORDAN, . . . did then and there intentionally and knowingly use a dangerous weapon, to-wit: a firearm and did and there intentionally and knowingly cause bodily injury to Pseudonym . . . by shooting her body with said firearm.[15]

The precise "conduct" charged in the indictment was the *use of a firearm . . .to cause bodily injury* to the person shot. It is this very conduct that Jordan denied committing. He denied the very possession or use of the gun and denied both any knowing and intentional injury to Williams. He also denied the requisite intent of "knowingly and intentionally" causing injury to a person. Under the rationale of the Texas Court of Criminal Appeals in *Juarez v. State*, Jordan's own testimony precluded the submission of an instruction on the defense of necessity. Accordingly, Jordan's trial counsel cannot be faulted for not performing a meritless and fruitless act. Jordan's claim on this ground lacks merit and should be denied.

---

[15]     Excerpt from the Indictment, ACR p.2.

<u>Self-Defense</u>

The right to use force in self-defense or in defense of a third person is granted in Chapter Nine of the Texas Penal Code.[16] Section 9.31 generally prescribes the conditions and circumstances under which the defense of self-defense may be invoked. Sections 9.34 and 9.35 proscribe special circumstances justifying the use of force (deadly or non-deadly).  The general provisions governing the presentation of the statutory defenses provided in the Texas Penal Code are set out in § 2.03, sub-section (c) of which provides: "The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." Since the defense of self-defense is governed by the general provisions of section 2.03(c), it is clear that no jury instruction concerning self-defense should be given unless evidence is admitted supporting the defense.  On the other hand, if evidence is admitted that supports the defense, an instruction should be given.

Jordan asserts the evidence admitted in his case was sufficient to raise self-defense or, if not, at least his attorney, in the light of his own knowledge of the identity of the "other man," should have investigated further and should have requested an instruction on self-defense.  In support of this position Jordan proffers his own testimony that he "was trying to defend himself from being rob [sic] or killed" . . .and "that the alleged victim was shot during the robbery attempt against petitioner, while petitioner was struggling with the robber and the gun the robber had went off."[17] Jordan alleges that he "did admit to the struggle with the robber and that it was the struggle that caused the alleged victim to be shot" and that his "testimony and admitance [sic] to the struggle was sufficient to raise the defense."

---

[16]     See Tex. Penal Code Ann. §§ 9.31, 9.32 (Vernon 1974 and Vernon Supp. 1986).

[17]     Reply and Objections, Docket No. 20, p.15.

9

In an analogous Texas shooting case,[18] a defendant charged with murdering his wife denied shooting his spouse at all, in self-defense or otherwise.  He denied shooting a gun at all and denied bringing a gun with him into the house. He consistently and unequivocally denied doing any act that could have caused the victim's death. On an appeal from his conviction, the defendant asserted that the trial court erred in failing to give a charge on self-defense even though it had been requested by the defendant's counsel.  Following a precedent from a previous case[19] the court held that the defendant, like the defendant in *Sanders*, did not present evidence admitting commission of the offense, but presented evidence justifying or excusing his actions so as to absolve him of responsibility for conduct that otherwise constitutes a crime. Quoting from *Sanders* the court observed:

> "A perusal of the new Penal Code assures one that a defense does not merely negate an element of an offense. Rather, in all of the Code's defenses, one principle runs consistently throughout: *evidence which constitutes a defense requires the accused to admit the commission of the offense*, but to justify or excuse his actions so as to absolve him of criminal responsibility for engaging in conduct which otherwise constitutes a crime."p. 406.

Continuing, the court found that like the defendant in *Sanders*, Johnson's "defensive theory and evidence negated his entire participation in this killing.  It did not justify participation; it denied any participation. We hold that appellant's total denial of any participation in the murder removed any requirement for a self-defense charge."[20]  The court went further to hold that "while a defendant may get a jury instruction on inconsistent defenses, he may not consistently repudiate during trial a

---

[18]     *Johnson v. State*, 715 S.W.2d 402 (Tex. App. 1986)

[19]     *Sanders v. State*, 707 S.W.2d 78 (Tex.Crim. App. 1986).

[20]     *Johnson, supra* at 406.

defense raised, if at all, only by the State's evidence and then rely on that defense in the jury charge."

With respect to the inconsistency of the defenses of accidental shooting and shooting in self-defense, the Texas Court of Criminal Appeals, the highest court in Texas for review of criminal cases stated:

> "While a defendant is certainly entitled to present inconsistent defenses, Appellant's assertion that she accidentally shot Loustaunau is inconsistent with her self-defense claim. See Saxton, 804 S.W.2d at 914. Given Appellant's contradictory statements about the shooting, the jury could have found that the self-defense claim was simply not believable."

Here, Jordan expressly denied possessing or using the gun.  He expressly denied any intent to injure Williams.  These were the very elements of conduct and requisite mental state that comprised the elements of the offense with which he was charged.  By analogy, the same doctrine of confession and avoidance articulated by the Texas Court of Criminal Appeals in *Juarez v. State* applies with equal force and effect to Jordan's claim to the affirmative defense of self-defense. Accordingly, Jordan's trial counsel cannot be faulted for not performing a meritless and fruitless act. Jordan's claim on this ground lacks merit and should be denied.

With respect to Jordan's tangential claims that his counsel should have "investigated" facts supporting his necessity and self-defense affirmative defenses, Jordan fails to identify or allege any fact that his counsel would have discovered through any such investigation.

Additionally, Jordan has not demonstrated that he has been prejudiced by his counsel's failure to submit a request for an defensive instruction for either self-defense or necessity because under *Strickland's* second prong Jordan has not shown that it is reasonably likely that the outcome of the case would have been different.  In finding Jordan guilty under the instructions that were given, the jury necessarily had to determine which of the two scenarios were believable, William's

or Jordan's.  Whether Jordan used the gun or not and whether he intended to shoot Williams or not, those were the very issues put before the jury by the indictment and the court's charge.  The respective credibility of each of these witnesses was for the jury to determine.  The ballistics reports showing that the shell casings came from the gun located where Jordan regularly stayed was sufficient to belie Jordan's own testimony.  The likelihood of a different result was not substantial.[21]

Failure to Object to Tampered Evidence/Double Jeopardy

Jordan's three remaining claims of failures by his trial counsel all arise out of the incident in his first trial involving the shell casing.  During Jordan's first trial that ended in a mistrial, a .380 caliber shell casing fell out of the pocket of William's blue jeans as the testifying investigator was exhibiting the jeans as an exhibit before the jury.  After a colloque among the court, the prosecutor and defense counsel, defense counsel asked for and received a mistrial.  Jordan claims his trial attorney was negligent in failing to object to the introduction of the shell casing in the second trial on the grounds that it was "tampered evidence" which was placed in the jeans by the prosecutor for evidentiary effect before the first trial jury.  He claims this tampered evidence was used to goad his counsel to ask for a mistrial thereby rendering his retrial to be precluded by "double jeopardy."  Then he claims that his trial counsel failed to plead "double jeopardy" as a ground for preventing the retrial.

The state responds that there is no evidence that the shell casing was placed in the jeans by the prosecutor to thereby goad the defendant into requesting a mistrial.  Furthermore, Jordan's trial counsel did contest the use of the shell casing by filing a motion to suppress and securing a hearing challenging the chain of custody and conclusions of the state's forensic expert's comparison of the shell casing to another found with the gun found in Jordan's apartment. But Jordan's counsel lost

---

[21]     The standard established under *Herrington v. Richter*, supra note 3.

that challenge.[22] Furthermore, Jordan has not shown that his counsel was goaded into seeking a mistrial. And therefor a "double jeopardy" plea by Jordan's trial counsel would have been unavailing.

I find that Jordan's trial counsel indeed did assert a motion to suppress the shell casing on chain-of-custody grounds thereby challenging the admission of the shell casing at trial and challenging the proposed ballistics expert's testimony concerning the connection between the shell casing that fell from the jeans pants leg and the gun seized from the residence where Jordan periodically stayed. But those challenges were expressly overruled.[23] The transcript of the first trial contains that portion of the proceedings when the shell casing fell from the pants and reflects all of the court participant's actions and reactions to that occurrence.[24]  The testimony offered at the hearing on Jordan's motion to suppress adequately explained the circumstances surrounding the custody and control of the blue jeans from the time of their seizure until the shell casing fell from the jean pants leg and thereafter.  Jordan's allegations regarding the appearance and manipulation of the shell casing by the prosecution are wholly conclusory.  He has alleged no facts to support any challenge to the recitation of the events leading up to the discovery of the shell casing in the courtroom at the time of the first trial.  Nor has he alleged any facts supporting any claim of manipulation of the shell casing and jeans as elements of admissible evidence in his subsequent retrial.  Nor has Jordan alleged any fact that a defensive ballistic expert might or would have found or reported had counsel engaged one.  Jordan's claim in this matter lacks merit and should be denied.

---

[22]     SCR Vol. 7, pp.6-54.

[23]     *Id*. pp.48 and 53.

[24]     SCR Vol. 6, pp.56-64.

As the state acknowledges, the Double Jeopardy Clause of the United States Constitution may bar a retrial in the prosecution "intended to goad the defendant" into requesting a mistrial.[25] But as found above, the transcript describing the shell casing appearance and the testimony at the suppression hearing adequately explained the appearance of the shell casing and negated any inference that its appearance was manufactured by the prosecution for effect before that jury or as a means of enticing Jordan's counsel to ask for a mistrial. In the absence of any allegations of facts that would support an inference of misconduct by the prosecution with regard to the appearance of the shell casing, I find that Jordan's claims of evidence tampering, goading a mistrial, and double jeopardy are without merit and should be denied.

<u>Fairminded Jurists Standard</u>

Finally, in *Harrington v. Richter* the Court stated, "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[26] I find that fairminded jurists would agree that Jordan has failed to show that the state court's denial of his application was in conflict with any prior decision of the United States Supreme Court.

---

[25]     *Martinez v. Caldwell*, 644 F.3d 238, 242-43 (5th Cir. 2011).

[26]     *Harrington v. Richter*, p.786.

14

<u>Recommendation</u>

Based upon the foregoing findings and conclusions, I recommend to the District Court that Alexander Jordan's petition for writ of habeas corpus be in all things DENIED.

<u>Standard Instruction to Litigants</u>

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ORDERED, this 11th day of June, 2014.

Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

15